**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARBISONWALKER INTERNATIONAL, INC., | |
| *Plaintiff*, | Civil Action No. 25-1281 |
| v. | |
| ANDREW PETERSHAGEN and PLIBRICO COMPANY, LLC, | |
| *Defendants*. | |

**ANDREW PETERSHAGEN'S RESPONSE
TO MOTION FOR PRELIMINARY INJUNCTION
<u>AND NOTICE OF LACK OF PERSONAL JURISDICTION</u>**

Pursuant to this Court's August 22, 2025 Scheduling Order (ECF 14), as amended, Defendant Andrew Petershagen responds to the Motion for Preliminary Injunction and provides notice that this Court lacks jurisdiction over the person of Petershagen.

## <u>INTRODUCTION</u>

This case is not about trade secrets. It is about leverage.

Andrew Petershagen is a single father of four, recently terminated from his position at Plibricio—a job the plaintiff itself describes as "more lucrative" than his prior employment. He now finds himself unemployed, unsure how to support his children, facing litigation in a state where he has never lived or worked.

Petershagen's former employer, HarbisonWalker International, Inc. ("Harbison"), seeks to enforce a noncompete clause that would bar Petershagen from working across the entire Gulf Coast region of Texas--more than roughly 12,000 miles--for two years.

The motion for a preliminary injunction is not a protective measure; it is a pressure tactic. Harbison knows Petershagen cannot afford to litigate in Pennsylvania. It knows he lacks the

1

resources to mount a jurisdictional defense, let alone a merits-based one. And it knows that by dragging him into court in a distant forum, it can extract from him what it could not obtain through contract: surrender and a sweeping injunction that would sideline him from his profession.

Petershagen never took, used, or shared any proprietary information. He never solicited Harbison customers. His employment with Plibrico was conditioned on honoring any enforceable obligations to Harbison. And even if Harbison's allegations were true—they are not—Petershagen no longer has the means or platform to violate anything, as he was fired from Plibrico on August 29, 2025. He now seeks a job unrelated to what Harbison does: the manufacture and sale of refractory materials.

The Court should not permit Harbison to use the equitable powers of this Court to achieve through litigation tactics in a venue with no jurisdiction over Petershagen what it cannot justify through law.

## ABBREVIATED BACKGROUND

Petershagen has never lived or worked in Pennsylvania.

For the entire time he was employed by Harbison, he lived and worked in Texas. When he left, Petershagen was responsible for sales in a slice of the Texas Gulf Coast region, where he lives. He was not exposed to product or engineering secrets.

When Harbison unilaterally reduced Petershagen's compensation package and earning capacity by, among other things, capping his commissions, Petershagen was compelled to seek a new job to support his four children. Harbison, itself, acknowledges that Petershagen's job with Plibrico was "more lucrative."

Before moving to Plibrico, he discussed with Plibrico his contractual obligations to Harbison. Petershagen never intended either to take Harbison's confidential information or to steal any Harbison customers.

On Friday, August 29, 2025, Plibrico fired Petershagen—so even had he intended to compete for customers or use Harbison secrets (which he did not), he is no longer able to do so. He is looking for a job that is in neither the sale nor manufacture of refractory material.

**ALLEGATIONS IN THE COMPLAINT**
**<u>REGARDING PERSONAL JURISDICTION</u>**

Relying on boilerplate language, the Complaint claims the defendants "have conducted activities in, maintained sufficient contacts with and have otherwise caused harm in the forum in a manner sufficient to place them within the personal jurisdiction of this Court . . ." (Complaint, ¶ 11).

Despite this boilerplate language, the Complaint acknowledges the "vast majority" of Petershagen's sales were in the Texas Gulf region and that his job was develop close relationships "with customers throughout his territory." (Complaint, ¶¶ 47, 53). The Complaint recognizes that Petershagen is a resident of Texas. (Complaint, ¶ 7).

Further, the Complaint includes no allegation that Petershagen consented to the jurisdiction of this Court or any other Court in Pennsylvania. Indeed, Exhibit 1 of the Complaint, which is a letter Plaintiff pleads is the Employment Agreement between Petershagen and Harbison, does not purport to contain any language consenting to personal jurisdiction in Pennsylvania. (Complaint, ¶ 57, Exhibit 1).

Recognizing its inability to meaningfully tie Petershagen to Pennsylvania, the Complaint asserts that "Petershagen routinely interacted with various personnel at HWI's operations hub in Pennsylvania." (Complaint, ¶ 48). In other words, and as confirmed in conversations with

3

Plaintiff's counsel, Harbison believes this Court has personal jurisdiction over Petershagen because, while in Texas, Petershagen "interacted regularly" with Harbison's headquarters in Pennsylvania.

**THE COURT DOES NOT HAVE
PERSONAL JURISDICTION OVER PETERSHAGEN**

Harbison's jurisdictional theory rests on remote communications between Petershagen in Texas and Harbison's headquarters in Pennsylvania.  That is not enough.

As this Court is aware, personal jurisdiction under the Due Process Clause may be "general" or "specific."  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).  General jurisdiction exists only when a defendant's contacts are so continuous and systematic as to render them essentially at home in the forum state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).  It is undisputed that Petershagen is at home in Texas—not Pennsylvania—such that general jurisdiction does not apply. (Complaint, ¶ 7).

The Third Circuit has explained specific jurisdiction:

> The inquiry as to whether specific jurisdiction exists has three parts.  First, the defendant must have "purposefully directed [its] activities at the forum."  Second, the litigation must "arise out of or relate to" at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."

*O'Connor*, 496 F.3d at 317 (cleaned up).  Jurisdiction must be evaluated on a claim-by-claim basis.

It is well settled "[t]he mere existence of a contract is insufficient to establish minimum contacts."  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008).  And "informational communications" such as phone calls or letters are inadequate to create jurisdiction.  *Vetrotex*

4

*Certainteed Corp. v. Consolidated Fiber Glass Products, Co.*, 75 F.3d 147, 152 (3d Cir. 1996). For the contract claim, the Court must look at "the totality of circumstances, including . . . the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). For the tort claims, the Court likely looks at whether defendant deliberately targeted the forum. *O'Connor*, 496 F.3d at 317.

Here, the very essence of Petershagen's employment was to build relationships and makes sales in the Gulf Coast region of Texas. Were he to try to poach clients, it would necessarily be in Texas. Were he to use Harbison price or customers lists, he would be using them outside of Pennsylvania. And while his employment agreement specifies that Pennsylvania law governs, the agreement is silent on jurisdiction and venue. (Complaint, Exhibit 1) For these reasons, this Court does not have specific jurisdiction over Petershagen.

## THE NONCOMPETE IS OVERBROAD AND UNENFORCEABLE

Harbison seeks to enforce a noncompete clause that would bar Petershagen from working across the entire Gulf Coast region of Texas—a region spanning over 12,000 square miles—for two years. That restriction is not narrowly tailored to protect legitimate business interests. It is designed to eliminate competition entirely.

> A restrictive covenant is reasonably necessary for the protection of the employer when it is narrowly tailored to protect an employer's *legitimate* business interests. Interests that a covenant may legitimately protect include trade secrets, confidential information, good will, and unique or extraordinary skills. Eliminating competition or gaining an economic advantage, however, are not legitimate business interests.

*PharMethod, Inc. v. Caserta*, 382 Fed.App'x 214, 220 (3d. Cir. 2010) (cleaned up, emphasis in original) (vacating preliminary injunction). Here, Harbison admits that it is bringing this action, at least in part, to bolster its "overall competitive position in the industry." (Complaint ¶ 5).

Petershagen was responsible for sales in Texas. He was not exposed to product or engineering secrets. His compensation was reduced unilaterally, forcing him to seek new employment to support his family. He disclosed his obligations to Plibrico and made clear he would not violate any enforceable provision. He did not solicit Harbison customers. He did not take confidential information. And now, he now longer has a job, let alone a job in the sales or manufacture of refractory materials.

## PETERSHAGEN CANNOT AFFORD TO PARTICIPATE IN LITIGATION IN PENNSYLVANIA

As noted above, Plibrico fired Petershagen.

Before Plibrico terminated Petershagen, it provided an initial retainer for Petershagen's counsel. That retainer is now exhausted. Petershagen cannot afford to prepare a Rule 12 motion, travel to Pittsburgh for a deposition, or participate in mediation and hearings. He is cooperating with Harbison and Plibrico to try to resolve this matter and has no objection to returning or destroying any Harbison materials in his possession.

He respects this Court and its orders. But he cannot afford to litigate in a forum that has no jurisdiction over him, especially where he poses no threat of irreparable harm, has no employment, and has four children to support and raise on his own. In short, Petershagen has no ability—financial and otherwise—to appear in Pittsburgh next week for a deposition, nor the following week for a mediation and hearing.

If Plibrico and Harbison are not able to resolve this matter, Petershagen will face an uncomfortable and untenable situation: he (and his counsel) have great respect for this Court and he has no intention (or ability) to harm Harbison, let alone to cause immediate and irreparable harm, but he cannot afford the time, money or resources to appear and litigate in Pennsylvania,

which does not have personal jurisdiction over him, in any event.  Neither he nor counsel have identified a solution to this dilemma.

## **CONCLUSION**

Harbison's motion is not about protecting trade secrets.  It is about exerting pressure on a former employee who cannot afford to fight back.

Petershagen is no longer employed by Plibrico.  He has no objection to an order precluding him from using any proprietary Harbison information.  He will search for and identify, then return or destroy any Harbison information in his possession.

But he begs to be excused from any further participation in this matter.  He is being sued in a forum that has no jurisdiction over him, under a contract that contains overbroad and unenforceable noncompete provisions, and based on conduct that occurred entirely in Texas.  Petershagen is now unemployed, without the financial resources to afford counsel, and actively seeking work not involved in the sale or manufacture of refractory materials.

The Court should not permit Harbison to use the machinery of litigation to extract from Petershagen what it could not obtain through contract or law.  The Court should deny Harbison's motion and excuse Petershagen, at a minimum, from appearing in Pittsburgh, if not from any further participation in this case.

Dated: September 5, 2025                    Respectfully Submitted,

                                            By: /s/ D. McArdle Booker
                                            Mathieu J. Shapiro
                                            Pa. ID No. 76266
                                            Andrew J. Horowitz
                                            Pa. ID No. 311949
                                            D. McArdle Booker
                                            Pa. ID No. 320890
                                            OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                            525 William Penn Place, Suite 1710
                                            Pittsburgh, PA 15219

412-566-1500
412-281-1530 (f)
mathieu.shapiro@obermayer.com
andrew.horowitz@obermayer.com
mcardle.booker@obermayer.com

*Counsel for Andrew Petershagen*

**CERTIFICATE OF SERVICE**

D. McArdle Booker, an attorney, hereby certifies that he caused the foregoing **Response to Motion for Preliminary Injunction and Notice of Lack of Personal Jurisdiction** in the above-captioned matter to be served on the parties of record and others listed below on this 5th day of September, 2025, by operation of the Court's electronic filing system to all counsel.

/s/ D. McArdle Booker