IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARBISONWALKER INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) Case No. 2:25-cv-1281-AJS ) ) Honorable Judge Arthur J. Schwab |
| v. | ) ) |
| ANDREW PETERSHAGEN and PLIBRICO COMPANY, LLC, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT PLIBRICO COMPANY, LLC'S RESPONSE
IN OPPOSTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant Plibrico Company, LLC ("Defendant" or "Plibrico") files this Response in Opposition to Plaintiff HarbinsonWalker International, Inc.'s ("Plaintiff" or "HWI") Motion for Preliminary Injunction ("Motion"), and states as follows:

**INTRODUCTION**

HWI's request for the extraordinary remedy of a preliminary injunction against Plibrico should be denied. The undisputed record shows that Plibrico acted responsibly at every step: it conditioned Petershagen's employment on strict compliance with his restrictive covenants, required written certifications of non-disclosure and non-solicitation, and assigned him to regions with no overlap with HWI's Texas customers. What Plibrico could not have anticipated was Petershagen's concealment from Plibrico of his continued employment with HWI, his formation of a competing company years earlier, and his misuse of personal email accounts.

When Plibrico discovered Petershagen's misconduct, it did exactly what equity demanded: it terminated his employment, secured and quarantined all relevant information, and offered to stipulate to an injunction to eliminate even the possibility of future risk. With Petershagen gone,

1

no imminent threat of irreparable harm to HWI exists. At most, HWI's claims sound in monetary damages, which cannot justify the extraordinary relief it now seeks.

The law in Pennsylvania is clear: preliminary injunctions are a drastic and exceptional remedy, appropriate only where the movant demonstrates both a likelihood of success on the merits and a clear, immediate threat of irreparable harm. HWI has shown neither. Its allegations of misappropriation rest entirely on Petershagen's personal conduct—conduct Plibrico neither authorized nor condoned—and, its theories of competitive harm collapse in light of Petershagen's termination.

Critically, the purpose of a preliminary injunction is to preserve the status quo pending final adjudication. That status quo has already been restored. Petershagen is no longer employed by Plibrico, and any materials he transferred have been siloed and rendered inaccessible. There is no ongoing conduct to enjoin, and no threat of future harm that would justify extraordinary relief.

Because HWI cannot establish either a likelihood of success or the existence of irreparable harm, and because the balance of equities tilts heavily in Plibrico's favor, HWI's motion for preliminary injunction should be denied.

## FACTUAL BACKGROUND

### I.     Summary Introduction

This case arises from HWI's baseless attempt to transform the misconduct of its former employee, Petershagen, into a claim against his subsequent employer, Plibrico. The record tells a different story. From the outset, Plibrico acted in good faith: it conditioned Petershagen's employment on strict compliance with his HWI obligations, required written certifications, and took affirmative steps to prevent any overlap with HWI's Texas customers serviced by Petershagen. What Plibrico could not anticipate—because Petershagen concealed it—was that Petershagen failed to resign from HWI when he began at Plibrico, that he had formed his own

competing entity years earlier, and that he misused personal email accounts in violation of his commitments. Once Plibrico discovered these facts, it promptly terminated Petershagen's employment, preserved and quarantined all potentially relevant materials, and offered to stipulate to an injunction to remove any lingering doubt. Against this backdrop, HWI's pursuit of extraordinary equitable relief against Plibrico rests on speculation and emotion rather than evidence.

II.  **HWI'S Allegations About Petershagen's Early Employment and Side Business**

HWI alleges that, on December 4, 2017, Defendant Petershagen received an offer letter from HWI for the position of Sales Representative in the Texas territory (the "HWI Offer Letter"). (Compl. ¶ 55, Ex. 1.) In January 2021, he was promoted by HWI to Sales Representative II. (Compl. ¶ 56.)

HWI further asserts that on January 19, 2023, Petershagen opened an entity known as Refractory Materials, Inc., listing his personal residence as the company's address. (Dkt. No. 20, ¶ 27, Ex. DD.) Beginning no later than January 2025, HWI claims Petershagen transferred HWI business information to his personal email accounts and to an account apparently associated with Refractory Materials, Inc. – refractorymaterials1@gmail.com. (Dkt. No. 18, ¶ 19.)

III.  **Plibrico's Cautious Approach to Employment Discussions**

In March 2025, Petershagen and Plibrico discussed possible employment. (Olszewski Decl., ¶ 4.) Plibrico made clear that compliance with HWI's covenants was a condition of any offer. (*Id.*, ¶ 6.) To that end, it required Petershagen to prepare a 30-60-90 day plan detailing how he would perform his new role without violating his obligations to HWI. (*Id.* ¶ 7, Ex. 1.) Because Plibrico sold into Texas mainly through third-party distributors, there was little realistic chance of Petershagen competing with HWI in that market. (*Id.* ¶ 8.) Even so, Plibrico expressly instructed him not to contact any of HWI's existing clients should he accept employment. (*Id.* ¶ 8.)

On April 7, 2025, Plibrico sent Petershagen a preliminary offer letter. (*Id.* ¶ 9.) During subsequent negotiations, Petershagen disclosed that resigning before June 2025 would cost him an HWI bonus. To offset that loss, Plibrico agreed to pay a $25,000 signing bonus. (*Id.* ¶ 9.)

On April 15, 2025, Plibrico issued a formal offer of employment for the role of Business Development Manager for the Southeast United States (the "Plibrico Offer Letter"). (Olszewski Decl., ¶ 10, Ex. 2.) The letter expressly acknowledged Petershagen's continuing obligations under the HWI Offer Letter and required his ongoing compliance. (*Id.*) The Offer Letter also confirmed that Petershagen and Plibrico agreed he would not solicit any HWI customers he had previously served, nor would he disclose HWI's confidential information or trade secrets. (*Id.*) The Offer Letter specifically stated in part:

> We understand that you are subject to certain restrictive covenants with your prior employer, HWI. We also understand that, as a Sales Representative at HWI, you sold almost exclusively to customers in the petrochemical/refinery industry, and only in the territory of Texas. Your territory for Plibrico will include the entire South Region, which includes ten states. As such, we do not anticipate any overlap between your prior customers at HWI and your customers at Plibrico. To the extent that the potential for any such overlap arises, you and Plibrico agree to rectify the situation as soon as possible by ensuring that you do not perform work for any such customer.
>
> Furthermore, both you and Plibrico specifically agree that your work at Plibrico will not include the solicitation of any customers that you previously worked at with HWI, and that you will not disclose any confidential information or trade secrets of HWI to Plibrico as part of your employment or otherwise.

(Olszewski Decl., ¶ 10, Ex. 2.) Petershagen signed the Offer Letter on April 17, 2025, and began work at Plibrico on May 5, 2025. (*Id.*, ¶ 12.)

IV. <u>**Petershagen Conceals His Continued Employment at Hwi ("Double-Dipping")**</u>

What Plibrico did not know—and could not reasonably anticipate—was that Petershagen failed to resign from HWI when he began work at Plibrico. Instead, he apparently sought to receive two

4

paychecks at once by continuing to work for HWI until May 19, 2025, when he belatedly tendered his two-week notice hoping to stay there until June. (Olszewski Decl., ¶ 12; Compl. ¶ 71.)

Plibrico did not learn of this "double-dipping" until it started to respond to HWI's Complaint (Dkt. No. 1), Motion for Preliminary Injunction (Dkt. No. 3), and supporting affidavits (Dkt. Nos. 18 & 20). (Taylor Decl., ¶ 4.) Upon learning of these facts, Plibrico promptly terminated Petershagen's employment. (Taylor Decl., ¶ 7.)

V. **Petershagen's Limited Role at Plibrico: No HWI Customers, No Confidential Use**

During his tenure at Plibrico, Plibrico structured Petershagen's responsibilities to avoid any overlap with his prior work at HWI. (Olszewski Decl., ¶ 13.) On a handful of occasions, he forwarded and discussed certain HWI data sheets. The source of those documents—whether from a customer, his personal email, or the internet—remains unclear, and further investigation by Plibrico is required. What is clear, however, is that these data sheets are not confidential. (Smith Decl. ¶ 7.) The data sheets are widely circulated in the refractory industry; indeed, versions are available on HWI's own public website. (*Id.* ¶ 7; https://thinkhwi.com/safety-data-sheets/.) Thus, Plibrico had no reason to believe that HWI would assert that these publicly available datasheets were confidential, proprietary, or constituted trade secrets.

HWI itself does little to protect this type of information. Customers routinely rely on this kind of information to identify the materials required for projects, much of which is standardized under the American Society for Testing and Materials (ASTM) procedures. (Smith Decl. ¶ 8.) Moreover, Plibrico already possessed the same required materials before Petershagen's employment. (*Id.*, ¶ 7.)

VI. **Plibrico Requires Written Certifications of Non-Competition and Non-Disclosure**

On June 10, 2025, HWI sent Plibrico a letter asserting that Petershagen remained bound by restrictive covenants and warning of a potential breach. (Olszewski Decl. ¶ 17, Ex. 3.) Six days

5

later, Plibrico responded in writing. The June 16 letter confirmed Plibrico's awareness of the covenants, emphasized that Petershagen's employment was conditioned on full compliance, and enclosed signed certifications from both Plibrico and Petershagen. Those certifications confirmed that neither would use or disclose any confidential, proprietary, or trade-secret information belonging to HWI. (*Id.*, ¶ 18, Ex. 4.)

### VII. Plibrico's Internal Investigation Exposes Petershagen's Misconduct

More than two months after this correspondence, HWI filed its Complaint and motion for preliminary injunction. In preparing its response, Plibrico undertook an internal investigation that revealed troubling facts. First, Petershagen appears to have worked for Plibrico for at least two weeks before he resigned from HWI. (Olszewski Decl., ¶ 12; Compl. ¶ 71.) Second, Petershagen had sent himself HWI information through his personal email account. Although Plibrico maintains that the information was not confidential, this conduct violated the representations Petershagen made to Plibrico when hired. (Taylor Decl., ¶¶ 4-8.) Third, Plibrico confirmed that Petershagen had formed a competing entity, Refractory Materials, Inc., in January 2023. (*Id.*, ¶ 6, Ex. 1.)

### VIII. Termination Of Petershagen and Mootness of HWI's Preliminary Injunction Request

In light of these discoveries, Plibrico terminated Petershagen's employment on Friday, August 29, 2025, at approximately 3:10 p.m. (Taylor Decl., ¶ 7, Ex. 2.) Plibrico siloed his emails so that only one custodian could review them and kept a copy for litigation purposes.

Following the termination, Plibrico's counsel notified HWI's counsel on September 3, 2025, that the requested injunction is now moot:

> 1. Plibrico cannot use any trade-secret, proprietary, or confidential information allegedly obtained from Petershagen because he is no longer employed, and his email accounts are under restricted custody.

2. Plibrico cannot engage in conduct that would contravene Petershagen's HWI Employment Agreement; he no longer works there.

3. Petershagen himself cannot perform services for Plibrico in any territory because his employment ended on August 29.

4. Plibrico cannot interfere with Petershagen's HWI Employment Agreement; it is not a party to that contract.

5. No information will be destroyed. All materials are segregated and preserved for discovery.[1]

While Plibrico has consistently denied engaging in conduct that violates either the HWI Offer Letter or trade-secret law, at this stage any surviving claims are claims for money damages. By definition, such claims cannot justify the extraordinary remedy of a preliminary injunction. To further narrow the issues, Plibrico even offered to stipulate to a consent injunction. HWI nevertheless insists on proceeding with its preliminary injunction motion, which Plibrico contends is a waste of judicial resources.

## **LEGAL STANDARD**

To prevail on a motion for preliminary injunction, a movant must establish: (1) that the movant is likely to succeed on the merits; (2) that the movant is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Ecosave Automation Inc. v. Del. Valley Automation, LLC*, 540 F.Supp.3d 491, 499 (PA. Dist. Ct. 2021). The failure to establish any element renders a preliminary injunction inappropriate. *Id*. The movant bears the burden of showing that these four factors weigh in favor of granting the injunction. *Id*. The movant must prove the first two factors, and if they fail on either, their request must be denied. *Id*.

---

[1] Plibrico has not included the actual communications here since certain portions could be considered settlement communications protected by FRE 408.

A likelihood of success on the merits "requires a showing significantly better than negligible but not necessarily more likely than not." *Id*., quoting *Reilly v. City of Harrisburg*, 858 F. 3d 173, 179 (3d. Cir. 2017). To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. *Ecosave Automation,* 540 F. Supp. 3d at 499. In determining whether success is likely, the Court must look to the legal principles controlling the claim and the potential defenses available to the opposing party. *Id*. at 500. In addition, a movant seeking a preliminary injunction must make a clear showing of immediate irreparable injury. *Id.* The injury must constitute potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction "must be the only way of protecting the [movant] from harm." *Id.*, quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.* 882 F.2d 797, 801 (3d Cir. 1989). The requisite feared injury or harm must be irreparable-not merely serious or substantial, and it must be a peculiar nature so that compensation in money cannot atone for it. *Signant Health Holding Corp. v. Debonis*, 2024 U.S. Dist. LEXIS 107699, Case No. 24-709, at *11 (PA. Dist. Ct. June 18, 2024). Additionally, where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction. *Id.*

## ARGUMENT

**I.** **HWI Cannot Demonstrate a Likelihood of Success on the Merits**

**A.** **Plibrico Did Not Misappropriate Any HWI Trade Secrets**

HWI raises claims against Plibrico under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and the Defend Trade Secrets Act ("DTSA"). To establish a violation of either the DTSA or PUTSA, a movant must show that the Defendant misappropriated a trade secret. *Signant Health Holding Corp.,* 2024 U.S. Dist. LEXIS 107699 at 13. Both statutes define a "trade secret"

8

as information that (1) derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use; and (2) that the owner thereof has taken reasonable measures to keep the information secret. *See* 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302. Both statutes define "misappropriation" as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." *See* 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302.

The threshold inquiry in a trade secret misappropriation claim under Pennsylvania law is whether the information at issue is a trade secret. *Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 582 (Pa. Dist. Ct. 2008). To be a trade secret, information must not be generally known in the wider business community or capable of being easily derived from public information. *Id* Trade secrets "must be particular secrets of the complaining employer and not general secrets of the trade in which he is engaged." *Id*., quoting *Capital Bakers v. Townsend*, 426 Pa. 188, 231 A.2d 292, 294 (PA. 1967).

### 1. Plibrico did not Engage in "Misappropriation."

Plibrico did not engage in "misappropriation" under 18 U.S.C. § 1839(5) or 12 Pa. C.S. § 5302. Plibrico did not know and had no reason to believe that Petershagen had acquired any alleged trade secret of HWI by improper means. As detailed in Plaintiff's motion and above, Petershagen apparently transferred or emailed various HWI documents to himself prior to his resignation and departure. HWI appears to argue that Petershagen's conduct establishes trade secret misappropriation by Plibrico given that Petershagen acquired the information at issue after he accepted (or started) his role at Plibrico and was acting as Plibrico's agent and for Plibrico's benefit. However, Plaintiff does not allege any facts which demonstrate any possession, use, or

9

disclosure of HWI's confidential information or trade secrets by Plibrico. On the contrary, all of its factual allegations regarding the misappropriation of HWI's trade secrets allege actions made or taken by Petershagen alone, which were not authorized or encouraged by Plibrico. HWI's illusory statements are leaps taken in an effort to bolster its non-extent claims against Plibrico and are not based in fact.

Further, as Plibrico was aware that Petershagen was subject to restrictive covenants, Plibrico made compliance with the HWI restrictive covenants an express condition precedent to Defendant Petershagen's employment. The Plibrico Offer Letter states in relevant part:

> Furthermore, both you and Plibrico specifically agree that your work at Plibrico will not include the solicitation of any customers that you previously worked with at HWI, and that you will not disclose any **confidential information or trade secrets of HWI to Plibrico** as part of your employment or otherwise.

(Olszewski Decl., ¶ 10, Ex. 2 (emphasis added).) Stated another way, any breach of the HWI restrictive covenants or disclosure of HWI trade secrets during Defendant Petershagen's employment with Plibrico is grounds for the immediate dismissal of Defendant Petershagen from Plibrico. To that end, Plibrico took various steps to insulate Defendant Petershagen from soliciting any customers of HWI, and from using or disclosing any confidential information or trade secrets of HWI, and directing him not to use any confidential information or trade secrets of HWI on behalf of Plibrico. Any alleged subsequent disclosure of HWI trade secrets by Defendant Petershagen was done without the knowledge or authorization of Plibrico. Additionally, to rectify any alleged disclosure, Plibrico terminated Defendant Petershagen's employment, and siloed any emails or communications sent by Defendant Petershagen from its servers so that they cannot be accessed by any other unauthorized party.

Accordingly, Plibrico has not misappropriated—i.e., obtained by improper means—any trade secrets of HWI. *See* 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302. Further, for the reasons set

forth immediately below, any alleged use of HWI's publicly available datasheets by Petershagen was with HWI's implied consent, and therefore, cannot constitute misappropriation by Plibrico. *See id.* Plibrico. HWI has failed to establish a likelihood of success on the merits on its trade secrets misappropriation claims against Plibrico.

### 2. The Documents at Issue Do Not Qualify as Trade Secrets

Alternatively, based upon Plibrico's current information, Petershagen only emailed to HWI limited documents belonging to HWI. These documents are widely accessed and used across the industry (showing implied consent), are not confidential, and cannot be used to recreate any HWI products from which Plibrico would derive economic value. Moreover, versions of the data sheet are accessible from HWI's website by the public and already were in Plibrico's possession. Accordingly, any data sheets belonging to HWI and used by Plibrico to generate engineering equivalents does not qualify as a trade secret protectable by the DTSA or the PUTSA.

### B. HWI's Tortious Interference Claim Fails for Lack of Inducement or Independent Wrong

To establish a claim for tortious interference with existing or prospective contractual relationships, the Plaintiff must demonstrate: (1) the existence of a contractual or prospective contractual relationship between the Plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) legal damage to the plaintiff as a result of the defendant's conduct. *Acumed LLC v. Advanced Surgical Servs., Inc.* 561 F.3d 199, 212 (3d Cir. 2009).

Pennsylvania courts require the Plaintiff, as part of its prima facie case, to show that the Defendant's conduct was not justified. *Id.* at 214. Further, Plaintiff must demonstrate that Defendant's interference gave rise to an independent cause of action. *Id.* at 216. Trade secrets "will

11

not be protected by the extraordinary remedy of injunction or mere suspicion or apprehension of injury." *Ecosave Automation,* 540 F. Supp. 3d at 502.

To the extent HWI's tortious interference claim rests on Petershagen's alleged breach of restrictive covenants, it cannot stand. HWI has not shown that Plibrico induced, encouraged, or facilitated any such breach—or that Plibrico ever directed Petershagen to disclose HWI's trade secrets in any form. *See Schuylkill Sports, Inc. v. Corporate Images Co.*, 2020 U.S. Dis.t LEXIS 103828, 32 (Pa. Dist. Ct. 2020). To the contrary, HWI's own filings acknowledge that Plibrico conditioned Petershagen's employment on full compliance with his continuing obligations under the HWI Offer Letter. Plibrico went further, requiring Petershagen to execute a certification confirming that he had not and would not use or disclose HWI's confidential or proprietary information and that he would honor his agreements with HWI throughout their term.

Alternatively, as detailed in Plaintiff's motion, Petershagen began transferring documents to himself in February 2025, months before he received an offer of employment from Plibrico. Moreover, and unbeknownst to Plibrico, Petershagen created and, upon information and belief, began operating a competing business named Refractory Materials, Inc., as of January 19, 2023, two years before he received an offer of employment from Plibrico, and 6 years after he executed the HWI Offer Letter containing the restrictive covenants which are the basis for Plaintiff's claim. Actions of which Plibrico were neither aware nor facilitated, and actions which are in direct contravention of the agreements and certifications made by Petershagen to Plibrico as a condition of his employment. Accordingly, HWI has not stated a claim for tortious interference upon which it can recover and its motion for preliminary injunction must be denied.

II.     **HWI Faces No Threat of Irreparable Harm**

Establishing a risk of irreparable harm is not enough. *Schuylkill Valley Sports, Inc. v. Corporate Images Co*., 2020 U.S. Dist. LEXIS 103828, 41 (Pa. Dist. Ct. 2020). The requisite for

injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat. *Id.* Issuing a preliminary injunction based only on the possibility of irreparable harm is inconsistent with the Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.* Accordingly, an injunction may not be used simply to eliminate the possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law. *Id.*

Further, there is no presumption of irreparable harm afforded to parties seeking injunctive relief. *Id.* Moreover, irreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it. *Signant Health Holding Corp.*, 2024 U.S. Dist. LEXIS 107699, at 22. A showing of past harm, without more, is insufficient to justify the issuance of a present-day preliminary injunction. *Ecosave Automation,* 540 F.Supp.3d at 507.

HWI's argument against Plibrico is merely that there is potential harm that through Petershagen, Plibrico has the potential to use or disclose its trade secrets. As detailed above, there is no factual or legal allegation made by HWI that Plibrico *is* currently using or disclosing trade secrets belonging to HWI. Further, with the termination of Defendant Petershagen from Plibrico and the siloing of any emails, communications, or information used or sent by Petershagen; there is no threat of future harm to HWI by Plibrico. As a preliminary injunction is only to be issued given an imminent threat of harm, HWI has failed to meet the requisite burden of showing that it is threatened with irreparable harm currently or in the future.

Moreover, HWI itself does not consider the potential future harm it may suffer should the court deny its motion for preliminary injunction an emergency. Petershagen began his employment with Plibrico on May 5, 2025, four months ago. Further, HWI did not file its motion for preliminary

injunction as an emergency motion, evidencing its belief that the harm is not, in fact, imminent but something that may happen sometime in the future.

### III.  The Balance of Harms Weighs in Favor of Plibrico

Additionally, as HWI is not in threat of imminent harm, the balance of harms weighs in favor of Plibrico and the denial of the preliminary injunction. Plibrico has already terminated Petershagen, the employee alleged to have violated his obligations with HWI and Plibrico, taken affirmative steps to ensure that Plibrico is not using or disclosing any confidential or trade secret information rightfully belonging to HWI, and has blocked all of Petershagen's emails and information from being accessed by other employees of Plibrico except the custodian. Because HWI has failed to meet its burden of demonstrating imminent future irreparable harm to its business by Plibrico, and because the balance of harms weighs in favor of Plibrico, HWI's motion for preliminary injunction must be denied.

### CONLCUSION

For the foregoing reasons, Plaintiff HWI's has failed to demonstrate that it has a likelihood of success on the merits of its claims and that there is an imminent threat of irreparable harm in its claims against Defendant Plibrico, and therefore, HWI's motion for preliminary injunction must be denied.

Dated: September 5, 2025          Respectfully Submitted,

                                          **PLIBRICO COMPANY, LLC**

                                        By:   */s/ Keith E. Allen*
                                                One of Defendant's Attorneys

Keith Allen (*pro hac vice*)
Ashley D. Pendleton (*pro hac vice*)
Laner Muchin, Ltd
515 N. State Street, Suite 2400
Chicago, IL 60654
Tel: 312-467-9800
kallen@lanerlaw.com,  apendleton@lanerlaw.com